140 So.2d 63 (1962)
Jack EBERT, Appellant,
v.
STATE of Florida, Appellee.
No. 2938.
District Court of Appeal of Florida. Second District.
April 13, 1962.
Thurman Justice, Cocoa Beach, for appellant.
*64 Richard W. Ervin, Atty. Gen., Tallahassee, Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
WHITE, Judge.
This is an appeal by the defendant below from a judgment of conviction with consequent sentence of six months to two years for indecent assault upon a child under the age of fourteen years.[1] The defendant-appellant will be referred to herein as the accused.
Presented on appeal is the question of whether or not it was prejudicial error to admit in evidence before the jury testimony concerning a purported incriminating admission by the accused to the arresting officer. The accused in his testimony denied making any statement in the nature of an admission; and he insists on appeal that if any such statement were made, it was due to improper inducements offered by Deputy Sheriff Willard E. Winnett through Reverend Jack Downey, minister of the First Methodist Church of Cocoa Beach, and that therefore the officer's testimony in that respect should have been excluded.
The elements of the offense as charged in the information were attested by the seven year old complaining witness and her parents, and thereupon Deputy Sheriff Willard E. Winnett was called as a witness for the prosecution. His testimony was proffered out of hearing of the jury. The trial judge, after also hearing testimony of Reverend Jack Downey, ruled the testimony of Deputy Winnett admissible over objection of counsel for the accused.
The testimony of Deputy Winnett was to the effect that he arrested the accused on warrant and took him to the Sheriff's office in Brevard County where the accused requested that his minister be called, which was done; that the minister, Reverend Jack Downey, arrived; that the witness advised the accused that he was not compelled to make any statement; that he, the witness, did not make any promise or offer any improper inducement to the accused but warned him that any statement he made could be used against him; that Reverend Jack Downey was present; that the said minister then talked with the accused alone and thereafter advised the witness that the accused was ready to tell what he had done; that the accused stated in their presence that "he didn't understand why he did these things, he didn't understand it; he didn't specifically point out, or say specifically what he had done * * * He just admitted to what he was accused of on the warrant after the warrant was read to him." (Emphasis added)
Reverend Jack Downey testified that the accused did not admit guilt during the three-way conversation in the Sheriff's office, but he testified that he did not recall that Deputy Winnett made any threats or promises or offered any inducement to the accused. He further testified, however, that there was "inducement made to me." His testimony in pertinent part continues as follows:
"Q What inducement was made to you?
"A When I came to the Court, or to the jail, that night, I did not know the charge, and when I came into Mr. Winnett's office, he received me saying, `Now, this man is a sick man.' And, explaining to me that he had all of the evidence to prove these things, and therefore we must, and he appealed to me as a Minister, we must think of this man. So, if he will confess of [sic] these charges, which we are certain of, then it will save a trial, the Judge will simply warn him, and perhaps, and he will go into some sort of treatment. And that it will receive no publicity and there will be no problem whatsoever. If you can get him to make this confession, then this I can assure you will be the case.

*65 "Q Did Mr. Winnett go further and say that he would intercede on the man's behalf by helping him get psychiatric help and intercede with the Judge, did he say that?
"A He said he would help him get psychiatric help, he explained of course that he could not tell the Judge what to do, but he would speak on his behalf and the Judge generally listens, he could have no assurance of that, but he said `I am quite certain that if he will confess,' this is in the initial conversation before I had seen Mr. Ebert, that the matter would be solved very readily, there would be no problem, no court case, simply the treatment."
In this connection there is a conspicuous absence of testimony of what, if anything, the minister related to the accused with respect to inducements purportedly offered by Deputy Winnett. In other words, there appears no testimony that any inducements were in fact passed along to the accused so as to influence him to admit conduct tending to show guilt. It is thus left to conjecture, or at most to inference, that the minister told the accused what Deputy Winnett had told the minister and that this caused the accused to make the statement attributed to him by Deputy Winnett.
Perceiving no legal impediment to the reception of the described testimony of Deputy Winnett, the trial court saw fit to let it go to the jury for that body's evaluation of its weight in conjunction with the evidence as a whole. In this we find no prejudicial error. The court ruled after having heard both Deputy Winnett and Reverend Downey in the absence of the jury. This procedure was in accordance with accepted practice, and presumption favors the trial judge's determination of the admissibility of such testimony. Thomas v. State, Fla. 1957, 92 So.2d 621; Cawthon v. State, 1935, 118 Fla. 394, 159 So. 366; Stoutamire v. State, 1938, 133 Fla. 757, 183 So. 316; Nelson v. State, Fla. 1957, 97 So.2d 250; 13 Fla.Jur., Evidence, § 264.
The accused on apeal cites only the case of Louette v. State, 1943, 152 Fla. 495, 12 So.2d 168, 172, where the court said:
"* * * It is quite generally held that where it appears that force or threats or inducements were actually used in obtaining an admission from the accused, such admission is not admissible in evidence against him."
This quotation is a correct statement of law, but it is impertinent to the instant case wherein no threats or "improper inducements" were shown to have been made to the accused or used in obtaining an admission from him.
Where an admission of guilt or of conduct from which guilt may be inferred is sought to be introduced in evidence, the rules governing admissibility are similar to the rules governing the admissibility of a confession. Louette v. State, supra; 13 Fla.Jur., Evidence, § 256. A customary and important point of judicial inquiry in determining whether a confessionary statement was free and voluntary is whether or not the accused was informed that he need not answer questions but that any statement he might make could be used against him. Patterson v. State, 1946, 157 Fla. 304, 25 So.2d 713, cert. denied, 329 U.S. 789, 67 S.Ct. 352, 91 L.Ed. 676; Stoutamire v. State, supra. There is testimony in the instant case that the accused was so warned.
Both the deputy and the minister stated that the accused was crying and disturbed because of his predicament. A confession or admission may not, however, be excluded merely because it was made under excitement or mental disturbance not induced by extraneous pressure but which arose from apprehension due to the situation in which the accused found himself. Cullaro v. State, Fla.App. 1957, 97 So.2d 40. The fact that an accused may have confessed in the hope of bettering his spiritual condition does not render his confession involuntary. Denmark v. State, 1928, 95 *66 Fla. 757, 116 So. 757. A confessionary statement is not rendered inadmissible by the accused being told that it would be easier on him if he told the truth, especially where he was informed that any statement he made could be used against him. Williams v. State, Fla. 1953, 69 So.2d 766, 768. See also Frazier v. State, Fla. 1958, 107 So.2d 16.
The case of Padgett et al. v. State, 1934, 117 Fla. 75, 157 So. 186 is somewhat similar to the case at bar. There the prosecution relied in part upon admissions made by defendants to a third party not an officer of the law. The defendants contended that the admissions were inadmissible because they were not freely and voluntarily made. A private citizen, one Towles, visited the defendant Padgett in jail and told him if he would go with him and show him the hide of the cow alleged to have been stolen he, Towles, would help get the matter compromised. The admissions followed. The court said:
"Another reason why we are impelled to hold that no error was committed by the court in admitting the alleged admissions and confessions in evidence is that there was no contention upon the part of the defendants that such admissions and confessions were procured by holding out the hope of reward or by the exercise of duress or by putting in fear, but, on the contrary, the defendants took the stand in their own behalf and testified positively that no inducements were offered to either of them to make any admissions or confessions by Towles and each for himself testified that he did not have any such conversation with Towles, so that the jury was left to determine the question not as to whether or not the alleged admissions and confessions were induced by the hope of reward, but whether or not they were made to Towles by the defendants at all. In other words, it became a question for the jury to determine a question of veracity between Towles on one side and the defendants on the other, which the jury appeared to resolve in favor of Towles, in which conclusion the jury was sustained by the trial court in refusing to grant motion for new trial." (Emphasis added)
No reversible error having been demonstrated in the instant case, the judgment of conviction must remain undisturbed.
Affirmed.
SHANNON, C.J., and SMITH, J., concur.
NOTES
[1] Fla. Stat. § 800.04, F.S.A.