300 So.2d 674 (1974)
STATE of Florida, Petitioner,
v.
Jesse STATEWRIGHT, Respondent.
No. 44047.
Supreme Court of Florida.
May 15, 1974.
On Rehearing July 26, 1974.
Rehearing Denied October 17, 1974.
*675 Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for petitioner.
Richard L. Jorandby, Public Defender and Richard S. Power and Edward H. Fine, Asst. Public Defenders, for respondent.
CARLTON (Retired), Justice.
We issued a writ of certiorari in this cause, and heard oral argument, based upon an asserted conflict between the decision sought to be reviewed and State v. Craig, 237 So.2d 737 (Fla. 1970).
In the case sub judice, reported at 278 So.2d 652, the District Court of Appeal, Fourth District, reversed on two grounds appellee's conviction of first degree murder. One of these grounds was that the admission into evidence of oral and written statements made by the appellee was error, since the pre-interrogation warnings given the appellee were insufficient to clearly inform him of his right to counsel during interrogation. The decision of the District Court on this point was based upon the *676 following statement of law quoted from Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):
"` ... an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate... . [T]his warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.' Miranda v. Arizona, supra at 471-472, 86 S.Ct. at 1626." (Emphasis supplied.)
At the interrogation of respondent he was advised that he did not have to say anything; that anything he said could be used against him in a court of law; that he would not be mistreated in any way or promised anything to get him to make a statement; and that he had a right to an attorney and if he did not have one, the State would furnish him with one at no cost to him. There was no specific warning that respondent could have counsel present during interrogation as a literal reading of Miranda would require, and this was the basis for the district court's reversal.
The trouble with the district court's holding is that the above-outlined interrogation of the respondent occurred PRIOR to Miranda. No matter what the subsequent requirements may be, the ruling in Miranda has been expressly held NOT to be retroactive. Johnson v. N.J., 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969).
Conflict accordingly appears with earlier pre-Miranda holdings which did not require the specific warning of availability of counsel during interrogation upon which the district opinion was based. We recognize that State v. Craig, supra, might be distinguished because of possibly differing circumstances but the legion of cases not requiring warning[1] before this decision in Miranda give the basis for conflict and, together with the above-cited U.S. Supreme Court holdings, require that the district's opinion be quashed.
The district court opinion is accordingly quashed and the cause is remanded for reinstatement of the trial court's judgment of conviction and sentence.
It is so ordered.
ADKINS, C.J., and ROBERTS, ERVIN, BOYD, McCAIN and DEKLE, JJ., concur.

ON REHEARING GRANTED
PER CURIAM.
Rehearing in this cause was requested pursuant to F.A.R. 6.17 and F.A.R. 3.14, asserting that, since the trial occurred subsequent to the decision of Miranda, the Miranda Rule applied so as to require the exclusion of certain oral and written statements made by the defendant and received into evidence. We have granted the rehearing without argument in light of the subsequent U.S. Supreme Court holding on the Miranda point involved in Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182, Opinion filed June 10, 1974, and upon the further point of evidence hereafter discussed.
For the reasons set forth below, we hold that although Miranda was applicable in view of the trial occurring subsequent to that holding, exclusion of this evidence was not required nor was error committed. As noted in our earlier opinion, Mr. Statewright *677 was interrogated prior to Miranda, and was advised of his rights. He was specifically advised inter alia that he had a right to an attorney, and that one would be furnished for him without cost if he did not have one, but he was not specifically advised that this right to counsel included the continuing right to have counsel present during interrogation. Mr. Statewright then waived his rights and gave a statement, which was admitted into evidence against him.
As we noted in our opinion, Miranda is not to be applied retroactively; however, we could have added that a certain limited retroactivity is applied to the Miranda ruling, in that where the interrogation took place prior to the decision of Miranda, but the trial began after the date of the decision, the Miranda Rule applies. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Hence, Miranda is applicable in this cause to this one extent. This does not mean, however, that the conviction must be reversed solely because of the insufficient warnings given to Mr. Statewright; Miranda itself stated that these safeguards were not intended to "create a constitutional straightjacket." 384 U.S. at 467, 86 S.Ct. 1772. As the United States Supreme Court noted in its recent decision in Michigan v. Tucker, supra, a distinction must be made in cases where the interrogation occurred prior to the Miranda decision but the trial began after Miranda was handed down. This difference lies in a violation of the defendant's substantive constitutional rights as distinguished from an inadvertent violation of the procedural safeguards designed to protect those rights.
In Michigan v. Tucker, supra, the police, in complete good faith, failed to warn the accused of his right to appointed counsel in the course of informing him of his other rights as required; the accused "waived his rights" and made a statement which led to the discovery of a witness whose testimony served to discredit the accused and was used at trial. In holding that this testimony was not required to be excluded as "fruit of the poisonous tree" obtained in violation of the Miranda ruling, the Supreme Court noted that the police conduct in question "did not deprive respondent of his privilege against compulsory self-incrimination as such, but rather failed to make available to him the full measure of procedural safeguards associated with that right since Miranda."
The question posed in Tucker was "how sweeping the judicially imposed consequences of this disregard (of Miranda warnings) shall be." It was noted that the accused's statements were excluded from the evidence, the questioned evidence being that of a third party not subjected to custodial pressures. The Supreme Court held that this evidence was properly admitted since the police conduct was in complete good faith, the evidence was not produced by any form of compulsory self-incrimination and there was no indication of coercion raising questions of untrustworthiness of the evidence.
Sub judice it is similarly clear that the accused was not compelled to testify against himself or coerced in any manner and that the police acted in good faith in informing the accused (albeit imperfectly) of his rights. The accused was specifically informed inter alia that he had a right to remain silent, that anything he said could be used against him and that he had a right to an attorney, at state expense if need be. He freely and voluntarily waived these rights and equally voluntarily, without any compulsion, made the statements, the use of which he now complains.
To hold that this conviction must now, more than eight years after the interrogation, be reversed because of an inadvertent failure to utter a supplemental single "magic phrase," solely because the exact letter of a procedural safeguard was not completely complied with, and where the *678 slip clearly did not violate the underlying constitutional rights,[1] flies in the face of reason, and of our harmless error statute.[2]Tucker plainly supports this view.
The purpose of the exclusionary rule is to compel respect for the constitutional guaranty against self incrimination by removing the incentive to disregard it. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). We fail to see how any deterrent effect would be served here, where the slip was an inadvertent one, the procedural safeguards set forth in Miranda had not been promulgated at the time of the interrogation, the accused in fact was warned of his rights to silence and to counsel, and he freely and voluntarily waived those rights.
Nor does the secondary justification of the exclusionary rule  protection of the courts from reliance on untrustworthy evidence  appear applicable here. No coercion was involved, any "pressures of custodial interrogation" were removed by the warnings given (including right to appointed counsel) and the voluntary waiver thereof. In light of the waiver at this point, the later applicable warning that defendant's right to counsel continued became moot, absent some showing that might make it material thereafter, when it would come into play, if at all. Moreover, means were available to the accused to test trustworthiness, including in this case evidence from the accused who took the stand in his own behalf.
In balancing the defendant's rights to the procedural safeguards designed to protect his underlying constitutional guaranties, against the strong interests of society to make available to the trier of fact all relevant and trustworthy evidence sought to be adduced, we find that, under the particular factual setting before us, and in accordance with the rationale of Michigan v. Tucker, supra, the trial court was not in error in allowing the admission of these statements of the defendant.
It is also urged that the conviction should be reversed due to the admission of evidence relating to a homosexual act allegedly committed by the accused some five years prior to the crime for which he was tried, the DCA having ruled that it was reversible error for the State, on rebuttal following the accused's denial of having committed the offense or of having homosexual tendencies, to introduce evidence in detail that the accused had in fact committed the offense. Although in most situations we would agree with the district court that the witness' answer on cross-examination is final as to irrelevant or collateral matters (no conviction of the offense being involved here), we are compelled to reverse the district court on this point also under the circumstances. Throughout the trial, the State had attempted to show that the motive for the murder was the accused's fear that the deceased would publicly reveal the accused's alleged homosexuality, the accused supposedly having made improper advances to the deceased. Under these circumstances, the testimony in question seems relevant to the issue of motive for the crime, in that it would tend to establish homosexuality of the accused, thus lending some weight to the State's theory as to the accused's motive. The testimony also went to the issue of premeditation under the State's theory of the case. We find no reversible error in the admission of this testimony under the facts present here.
Accordingly, our prior opinion, filed May 15, 1974, is modified to the extent set forth above, and is in all other respects reaffirmed. *679 The district court opinion is quashed and the cause remanded for reinstatement of the trial court's judgment of conviction and sentence.
It is so ordered.
ADKINS, C.J., and ROBERTS, BOYD and DEKLE, JJ., concur.
ERVIN and McCAIN, JJ., dissent.
NOTES
[1] See, for instance, Davis v. State, 90 Fla. 317, 105 So. 843 (1925); Cawthon v. State, 118 Fla. 394, 159 So. 366 (1935); Brown v. State, 135 Fla. 30, 184 So. 518 (1938).
[1] The voluntary, non-coerced statements of the accused, after he was warned of his right to remain silent and to counsel and had waived those rights, cannot be said to have been compelled so as to invoke the privilege against compulsory self-incrimination.
[2] F.S. § 924.33.