## STATE OF FLORIDA v TUCKER
### Case No. 87-86942 TTA02
County Court, Palm Beach County, Florida
September 9, 1987

### APPEARANCES OF COUNSEL

**Gwen Kellman,** Certified Legal Intern, State Attorney's Office, for plaintiff.

**Fred Susaneck, Essen & Essen, P.A.,** for defendant.

### OPINION OF THE COURT

HOWARD C. BERMAN, County Judge.

This Cause came before the Court upon Defendant's Motion to Suppress breathalyzer results based upon the Defendant's arrest for driving under the influence of alcohol. The State of Florida was represented by Certified Legal Intern Gwen Kellman and the Defendant was represented by Fred Susaneck. The Court having taken

testimony, heard argument of counsel and being otherwise fully advised in the premises, the Court finds as follows:

## FACTS

The Defendant was arrested for driving under the influence of alcoholic beverage on May 3, 1987, by Deputy Sheriff John Howley. After the stop, Deputy Sheriff Howley noticed that the Defendant had bloodshot eyes, odor of alcoholic beverage on his breath as well as a dazed appearance. Deputy Howley then gave the Defendant some roadside sobriety tests and after the performance on these tests as well as the defendant's overall appearance, Deputy Howell arrested the Defendant for driving under the influence of alcohol and he was transported to the Palm Beach County Jail for a breathalyzer test. At the Palm Beach County Jail, the Defendant was engaging Deputy Sheriff Howley in a conversation about the breathalyzer test. Deputy Sheriff Howley told the Defendant that "if he blew under a .05%, then he would "un-arrest" him and take him back to his car." The Defendant was also read the implied consent and after the implied consent, the Defendant then took the breathalyzer test and he received 2 readings of .11%. These tests were done approximately 1 hour and 20 minutes after the initial stop. After the breathalyzer readings, the Deputy Sheriff then processed the Defendant for his arrest.

## FINDINGS

The Defendant argues that a promise had been made to the Defendant to induce him to do something that he is not required to do. The Defendant further states that the Florida Implied Consent Law establishes plainly what a Defendant should be told in relationship to his decision in whether or not to take the breath test. The implied consent law does not provide for a defendant being "un-arrested" if he takes a test and has a low reading.

Neither the State or the Defense cited any cases that are direct on point. The Defendant cites cases which were inapplicable to the issue before the Court. The State cites *Pardo v. State,* 429 So.2d 1313 (Fla. 5 DCA 1983), *Sambrine v. State,* 386 So.2d 546 (Fla. 1980), *State v. Young,* 483 So.2d 31 (Fla. 5 DCA 1985) and *State v. Gunn,* 408 So.2d 647 (Fla. 4 DCA 1981). These cases have to do with the implied consent and the applicable results. None of these cases address the issue of telling a Defendant that if he takes a test and has a low reading then he would be "un-arrested".

The Court is of the opinion that the issue presented is similar to an involuntary confession obtained by police as a result of police conduct.

If the police urge a Defendant by direct or implied promises or threats, to make a statement, the admission would be suppressed because it violates a basic tenet of the law that a confessing Defendant should be entirely free from the influence of hope or fear. See, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), *Lynumm v. Illinois,* 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed. 2d 922 (1963). In regard to the method of police interrogation, the Florida Courts have stated that "while advising an accused to tell the truth and to confess does not ordinarily render a confession inadmissible, or the adjuration is accompanied by an inducement or suggestion of a benefit, the resulting confession cannot stand." *State v. Chorpenning,* 294 So.2d 54, 56 (Fla. 2 DCA 1974). In *Brown v. State,* 413 So.2d 414 (5 DCA 1982), a confession was invalidated where an officer promised to drop other charges if the Defendant gave a statement.

It is cases such as above which would tend to make a breathalyzer reading inadmissible. If Deputy Sheriff Howley was thinking about "un-arresting" the Defendant based on any breathalyzer results, he could have read the Defendant his implied consent, waited for the reading, and if the reading had been .05% or below he would have had the same option of "un-arresting" the Defendant if he so desired. Therefore, based upon the foregoing, it is

ORDERED AND ADJUDGED that the Defendant's breathalyzer results are suppressed.

DONE AND ORDERED in chambers in West Palm Beach, Palm Beach County, Florida this 9th day of September, 1987.